# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

_____

| | |
|---|---|
| **In Re:** | |
| **Elvin W. Smith and** | **Bankruptcy Case** |
| **Linda L. Smith,** | **No. 16-00990-JDP** |
| **Debtors.** | |

_____

## MEMORANDUM OF DECISION
_____

**Appearances:**

    William J. O'Conner, Boise, Idaho, Attorney for Debtor.

    Joseph M. Meier, Boise, Idaho Attorney for Chapter 7 Trustee.

### *Introduction*

    Debtors Elvin Warren Smith and Linda Loreen Smith filed a chapter

7[1] petition on July 29, 2016.  Dkt. No. 1.  On Schedule A/B, they listed their

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532.  All references to "IRC" are to the Internal Revenue Code, 26 U.S.C. §§ 1–9834.

MEMORANDUM OF DECISION – 1

interest in an individual retirement account ("IRA") described as "U.S.

Bank Retirement Plan, Traditional IRA, account ending in 1329" ("the U.S.

Bank IRA") with a value of $60,656.26.  Debtors claimed the funds in this

IRA exempt on Schedule C, under Idaho Code § 11-604A and

§ 522(b)(3)(C).

On November 2, 2016, chapter 7 trustee Noah Hillen ("Trustee")

filed an objection to Debtors' claim of exemption as to the IRA funds ("the

objection").  Trustee's Obj. to Claim of Exemption, Dkt. No. 26.  Debtors

filed an opposition to the objection, and Trustee responded.  Resp. to Obj.,

Dkt. No. 33; Mem. in Resp. to Debtors' Resp. to Obj., Dkt. No. 40.  On

February 14, 2017, the Court conducted a hearing at which the parties

presented evidence.  Minute Entry, Dkt. No. 47.  Following the hearing, the

parties filed briefs.  Dkt. Nos, 48, 49, 50.  The Court then took the issues

under advisement.

Having considered the evidence and the parties' arguments, as well

as the applicable law, this Memorandum sets forth the Court's findings,

conclusions and reasons for its disposition of the objection.  Rules 7052;

MEMORANDUM OF DECISION – 2

9014.

*Facts*

**A.      Closing the Provident IRA and the Life Partners' Bankruptcy**

At the hearing, Elvin Smith ("Smith") testified that, sometime prior to 2014, he deposited approximately $419,000 into an IRA ("the Provident IRA") managed by Provident Trust Group ("Provident").  The funds in the Provident IRA were invested in several life insurance policies sold by Life Partners, Inc. ("Life Partners").  Smith testified that, at the end of 2013, he decided to close the Provident IRA because he no longer wanted to pay the annual fees for Provident to manage the account.  *See also* Ex. 101.  On November 25, 2013, Smith opened a U.S. Bank IRA account, which did not require an annual fee, so that he could deposit any funds he eventually received from his investments in Life Partners policies.  *See* Ex. 100.

To close the Provident IRA, Smith testified he sent a letter in which he informed Provident that he had established the U.S. Bank IRA, and that he no longer wanted Provident to monitor his account.  That letter is not in included in the evidentiary record.

MEMORANDUM OF DECISION – 3

On January 31, 2014, Provident sent a letter to Smith regarding "Change of Ownership, Account #2512-Elvin W Smith." Ex. 202. The letter recites that "[w]e received your directive to close the above referenced account", and after requesting a $250.00 account closing fee, provides, "[w]e have prepared a Change of Ownership form to re-register your assets from Provident Trust Group to you individually." *Id.*

In a response letter dated February 8, 2014, Smith informed Provident that he canceled the account because he could no longer pay the yearly maintenance fee, and that he had set up the U.S. Bank IRA. Ex. 101. He closed the letter by stating, "I am at this time not able to pay your closing fee as all you have to do is close the account." The letter makes no reference to the "Change of Ownership" mentioned in the January 31 Provident letter. Apparently, there was no further correspondence between Smith and Provident concerning the closing of his account.

On May 9, 2014, Purchase Escrow Services, LLC, an escrow agent for Life Partners, sent Smith a letter indicating it had been able to resell one of

MEMORANDUM OF DECISION – 4

his insurance policies and would be distributing approximately $2,800.[2]

Ex. 102.  The letter was addressed to "ELVIN SMITH IRA."  *Id.*  Smith

testified that, when he received this distribution, he did not deposit the

funds into the U.S. Bank IRA, but instead put them in his checking account.

He testified he did so because he needed access to the money to pay bills

and other expenses.

Sometime prior to August 2014, Life Partners filed for bankruptcy.

The Life Partners schedules indicated "Elvin Smith" was an unsecured

creditor with a fractional ownership position in a number of policies.  Ex.

201.  On August 19, 2014, Smith filed a proof of claim in the Life Partners

bankruptcy case for $442.460.16 indicating therein that the creditor was

"Elvin Smith".  Ex. 204.   An attachment to the proof of claim states,

"[b]elow is a list of all the life insurance policies which I purchased from

Life Partners Inc. Elvin W. Smith . . . . "  It then lists a description of each of

the policies.  *Id.*

**B.     Tax Issues in 2016**

--------

[2] The letter also indicates Smith's initial investment was $25,000.  Ex. 102.

MEMORANDUM OF DECISION – 5

In a letter dated April 16, 2016, Smith wrote to Provident regarding "2014 Form 1099-R." Ex. 103. Apparently, Provident had issued an IRS Form 1099-R in 2014 after closing Smith's account. Ex. 211. However Smith testified he did not see the 1099-R until 2016, when the IRS had contacted him requesting that he file a 2014 federal tax return. *See also* Ex. 103. Smith testified that neither he nor his wife had been employed or filed income tax returns for the years 2014–2016. In the April 16 letter, Smith explained that he did not receive a distribution in 2014; he requested that Provident correct the 1099-R form. Ex. 103. Apparently, Provident responded to this letter on April 27, 2016, but that letter is not on the record. *See* Ex. 203 ("as stated in our letter dated April 27, 2016").

In a letter dated July 4, 2016, Smith again wrote Provident asking that it either send him the amount shown in the 1099-R as a distribution, or that it send a corrected form to the IRS. Ex. 104. Provident responded in a letter dated July 15, 2016. Ex. 203. In it, Provident stated that the "1099-R was issued for [the closing of the IRA account] as the asset was distributed in-kind from your IRA to you personally."

MEMORANDUM OF DECISION – 6

During this time, Smith had also been communicating with the IRS.
In a letter dated July 4, 2016, Smith explained to the IRS that he was trying
to resolve the issue with Provident.  Ex. 105.  After receiving Provident's
July 15 letter to him, Smith sent it to the IRS with a letter dated July 15,
2015, writing "[Provident's reply] shows that there was no money sent to
me.  Therefore, there was no income to be reported and no taxes to be
paid."  The IRS responded in a letter dated August 15, 2016, stating
"[b]ased on your information we are taking no further action at this time,
but may need to contact you again if other tax issues arise."  Smith has had
no further communications with IRS about the 2014 transactions with
Provident.

## C.    Smith's Sale of the Claim in Life Partners' Bankruptcy Case

In a letter to Smith dated June 6, 2016, an entity known as ASM
Capital ("ASM") expressed interest in purchasing Smith's claim in the Life
Partners bankruptcy case for $60,655.62.  Ex. 205.  Smith accepted ASM's
offer in a letter dated June 6, 2016, and attached a signed copy of a claim
purchase agreement that had been included with ASM's original letter to

MEMORANDUM OF DECISION – 7

him.  Exs. 206, 207.  The purchase agreement indicates "Elvin Smith" was

the seller of the claim; it was signed by "Elvin Smith."  Ex. 207 at 1, 3.

On June 14, 2016, ASM filed a "Transfer of Claim" form in the Life

Partners bankruptcy case that listed "Elvin Smith" as the transferor.  Ex.

201.  On July 5, 2016, the clerk of the bankruptcy court sent a notice to

"Elvin Smith" indicating that the claim he originally filed had been

transferred.  Ex.  208.  Sometime prior to June 27, 2016, ASM sent Smith the

funds for the purchase of his claim.  Smith deposited those funds in his

U.S. Bank IRA account on June 27, 2016.  Ex. 209.

## D.    Debtors' Bankruptcy

Two days later, on July 29, 2016, Debtors filed their chapter 7

petition.  Dkt. No. 1.  They listed the $60,656.26 in the U.S. Bank IRA on

their Schedule A/B.  Debtors claimed the entirety of the funds in the IRA

exempt on Schedule C under Idaho Code § 11-604A, and $0.00 exempt

under § 522(b)(3)(C).  Trustee objected to the exemption claim.

## *Analysis and Disposition*

Trustee argues that the funds in Debtors' U.S. Bank IRA are not

MEMORANDUM OF DECISION – 8

exempt because at the time they were deposited in 2016, Debtors were not

eligible to make an IRA contribution because they had no earned income.

Tr.'s Suppl. Mem. at 6–8.  In addition, Trustee argues that the funds were

not a proper "rollover" IRA contribution for a number of reasons.  Tr.'s

Reply at 5–6, Dkt. No. 50; Obj. at 6, Dkt. No. 26.

Debtors urge the Court to look to the substance, not the form, of the

transactions in this case.  They contend that Provident is to blame for any

defects in what would otherwise be a proper rollover contribution because

Provident changed the Life Partners investments in the Provident IRA to

Smith's individual name without his authorization.  Resp. to Tr.'s Obj. at 3,

Dkt. No. 33; Resp. to Tr.'s Suppl. Mem. at 1–6, Dkt. No. 49.  They argue

that, to deny their claim of exemption in the U.S. Bank IRA funds would, in

this case, be a "manifest injustice" because Debtors had already lost the

bulk of their retirement investment through the fraud of Life Partners,[3] and

now, what little they received from the Life Partners deal is at risk of loss

to Trustee.  Resp. to Tr.'s Obj. at 3, Dkt. No. 33.  Finally, Debtors request

---

[3] Nothing in the record corroborates these statements.

MEMORANDUM OF DECISION – 9

that the Court grant them leave to seek an IRS determination as to whether

the funds in the U.S. Bank IRA are tax exempt under 26 U.S.C. § 408, and

therefore exempt.  Resp. to Tr.'s Suppl. Mem. at 7.

After a brief overview of the relevant bankruptcy exemption laws,

the Court will address each of these arguments in turn.

**A.     Bankruptcy Exemptions in Idaho**

This Court has previously explained:

> As is well-understood, when a bankruptcy petition is filed, a
> bankruptcy estate is automatically created, into which flows all
> legal and equitable interests which Debtors have in property, as
> of the commencement of the case.  § 541(a).  The Code permits
> Debtors to shield certain property from administration by
> Trustee, through the use of exemptions.  § 522(b)(1).  While the
> Code contains a list of property which may be claimed as
> exempt, it also allows states to opt out of the federal exemption
> scheme in favor of its own.  § 522(b)(3).  Idaho has chosen to opt
> out, and thus debtors in this state may claim only those
> exemptions allowable under Idaho law, as well as those listed in
> § 522(b)(3).  Idaho Code § 11–609; 11 U.S.C. § 522(b)(3).

*In re Hall*, 464 B.R. 896, 903 (Bankr. D. Idaho 2012).

Exemption statutes are liberally construed in favor of the debtor in

Idaho.  *In re Thomas*, 477 B.R. 778, 782 (Bankr. D. Idaho 2012); *In re Hall*, 464

MEMORANDUM OF DECISION – 10

B.R. at 903.  "However, the statutory language may not be 'tortured' in the

guise of liberal construction."  *In re Wiley*, 352 B.R. 716, 718 (Bankr. D.

Idaho 2006) (citing *In re Collins*, 97.3 IBCR 78, 79 (Bankr. D. Idaho 1997)).

**B.    IRA Exemptions in Idaho**

Here, Debtors claim the funds in the U.S. Bank IRA are exempt

under Idaho Code § 11-604A.[4]  The Idaho legislature enacted Idaho Code §

11-604A "to ensure the well-being of its citizens by protecting retirement

income to which they are or may become entitled."  Idaho Code § 11-

604A(1).  It provides:

> The right of a person to a pension, annuity, or retirement
> allowance or disability allowance, or death benefits, or any
> optional benefit, or any other right accrued or accruing to any
> citizen of the state of Idaho under any employee benefit plan,
> and any fund created by the benefit plan or arrangement, shall
> be exempt from execution, attachment, garnishment, seizure, or

---

[4] Debtors also claimed the account as exempt pursuant to § 522(b)(3)(C), but listed the exempted value as "$0.00".  Schedule C, Dkt. No. 1.  The parties have addressed no arguments regarding this claim, and the Court has previously held that exemptions will be allowed only to the extent they are claimed. *See In re Hobart*, 452 B.R. 789, 803–04 (Bankr. D. Idaho 2011) (citing *Schwab v. Reilly*, 130 S.Ct. 2652, 2660 (2010); *Gebhart v. Gaughan (In re Gebhart)*, 621 F.3d 1206, 1210 (9th Cir.2010)).  Because Debtors offer no arguments to support a § 522(b)(3)(C) exemption, and because, even if exempt, they value the exempt property at $0.00, the Court declines to allow an exemption under this statute.

MEMORANDUM OF DECISION – 11

other levy by or under any legal process whatever . . . .

Idaho Code § 11-604A(3).  The Court has explained that, for the purposes

of this exemption statute, "employee benefit plan" is defined expansively

to include "any plan or arrangement" described in one of six sections of the

Internal Revenue Code, including IRC § 408, which governs the

establishment and operation of IRAs.  *In re McClelland*, 08.1 IBCR 5, 7, 2008

WL 89901, at *3 (Bankr. D. Idaho Jan. 7, 2008) (citing Idaho Code §

11–604A(4)(b)).  Accordingly, in Idaho, a bankruptcy debtor may exempt

his or her interest in a qualified IRA as prescribed in IRC § 408.

C.     **IRC § 408**

IRC § 408 provides, in relevant part that:

the term "individual retirement account" means a trust
created or organized in the United States for the exclusive
benefit of an individual or his beneficiaries, but only if the
written governing instrument creating the trust meets the
following requirements:

(1) Except in the case of a rollover contribution described in
subsection (d)(3) . . . no contribution will be accepted unless it
is in cash, and contributions will not be accepted for the
taxable year on behalf of any individual in excess of the
amount in effect for such taxable year under [IRC §]

MEMORANDUM OF DECISION – 12

219(b)(1)(A) . . . .

26 U.S.C. § 408(a)(1).   IRC § 219, in turn, fixes the maximum amount of

income that an individual may deduct for tax purposes for contributions

made during the tax year to an IRA.   Any contributions made to an IRA in

excess of the amount allowable as a deduction under IRC § 219 are

considered "excess contributions."  26 U.S.C. § 4973(b).  Generally, excess

contributions are taxed with a six-percent excise tax each year until they

are removed from the IRA or applied towards the contribution limits of the

taxpayer in future years.  26 U.S.C. § 4973(a).

Given these statutory requirements, the issue before the Court is

whether, in 2016, the funds Debtors received from ASM were eligible for

deposit in their U.S. Bank IRA under the provisions of IRC § 408, such that

they are exempt under Idaho Code § 11-604A.

## D.    Debtors' Right to Make IRA Contributions in 2016

Trustee first argues that Debtors' 2016 deposit of funds into the U.S.

Bank IRA did not qualify under IRC § 408 because Debtors were not

entitled to make any IRA contribution that year.  Tr.'s Suppl. Mem. at 6–8,

MEMORANDUM OF DECISION – 13

Dkt. No. 48.  As near as the Court can tell, Debtors have not contested this

argument.  The Court agrees with Trustee.

The funds in the U.S. Bank IRA were deposited prior to the filing of

Debtors' bankruptcy petition.  If they were qualified contributions under

§ 408, they are exempt under § 11-604A.  However IRA "contributions will

not be accepted for the taxable year . . . in excess of the amount in effect for

such taxable year under [IRC] section 219(b)(1)(A)."  That statute provides:

Maximum amount of deduction.--

(1) In general.–The amount allowable as a deduction under
subsection (a)[5] to any individual for any taxable year shall not
exceed the lesser of--

> (A) the deductible amount, or
> (B) an amount equal to the compensation includible in
> the individual's gross income for such taxable year.

For purposes of paragraph (b)(1)(A), "deductible amount" is

generally $5,000.  26 U.S.C. § 219(b)(5)(A).  However for those individuals

---

[5] 26 U.S.C. § 219(a) provides: Allowance of deduction. – In the case of an
individual, there shall be allowed as a deduction an amount equal to the
qualified retirement contributions of the individual for the taxable year.

MEMORANDUM OF DECISION – 14

over the age of 50 in 2016, including Debtors,[6] that amount is increases to

$6,000. 26 U.S.C. § 219(b)(5)(B). Debtors could also benefit from a cost-of-

living adjustment for that year adding an additional $500, bringing the

total "deductible amount" for an IRA contribution in 2016 to $6,500. 26

U.S.C. § 219(b)(5)(C). Thus, Debtors collective "deductible amount" was

$13,000 in 2016. *See* 26 U.S.C. 219(f)(2).

However, recall, the "maximum amount of deduction" under IRC

§ 219(b)(1) is the *lesser* of subparagraphs (A) and (B). While Debtors could

have deposited up to $13,000 in an IRA in 2016 under subparagraph (A),

under subparagraph (B), the deduction was limited to the amount of their

"compensation," a term defined to mean "earned income." 26 U.S.C.

219(f)(1). Since neither of Debtors were employed in 2016, they had no

earned income, and in turn, their "compensation" for that year was $0.

Because $0 is the lesser amount of subparagraphs (A) and (B), the "amount

in effect" for purposes of IRC § 408(a)(1) was also $0.

Simply put, Debtors were not entitled to make qualified IRA

---

[6] Tr.'s Suppl. Mem. at 8, Dkt. No. 48.

MEMORANDUM OF DECISION – 15

contributions in 2016.

///

### E.    Rollover Contributions

Even if Debtors were not eligible to make contributions to an IRA in

2016 because they had no earned income, the amounts they deposited in

the U.S. Bank IRA would still receive favorable treatment under IRC § 408,

and thus be exempt under § 11-604A, if the deposit was a "rollover

contribution."  Debtors argue that this is what happened in 2016, despite

the many quirks in these facts.  Debtors' argument lacks merit.

The contribution limit for IRA deposits does not apply to rollover

contributions as described in IRC § 408(d)(3).  26 U.S.C. § 408(a)(1)

(establishing deposit limits "except in the case of a rollover contribution").

In particular, § 408(d)(3) provides, in relevant part, that:

"[p]aragraph 1[7] does not apply to any amount paid or
distributed out of an individual retirement account . . . to the

---

[7]    IRC § 408(d)(1) requires that distributions from an IRA, other than
distributions made as part of a rollover, are subject to taxation: "[e]xcept as
otherwise provided in this subsection, any amount paid or distributed out of an
individual retirement plan shall be included in gross income, by the payee or
distributee . . . ."  26 U.S.C. § 408(d)(1).

MEMORANDUM OF DECISION – 16

> individual for whose benefit the account . . . is maintained if – (i)
> the entire amount received (including money and any other
> property) is paid into an individual retirement account . . . for
> the benefit of such individual not later than the 60th day after the
> day on which he receives the payment or distribution."

26 U.S.C. § 408(d)(3)(A)(i).

Debtors insist that the 2016 deposits made to the newly established U.S. Bank IRA were simply the culmination of what was, in effect, a "rollover" of their original investment in the Provident IRA.  But Trustee argues that Debtors' 2016 deposit in the U.S. Bank IRA did not qualify as a rollover contribution for two reasons.  First, the source of the funds Debtors used to make the deposit did not result from any rollover of Debtors' original deposits at Provident, but instead, was the sale of their claim in the Life Partners bankruptcy case.  Tr.'s Reply at 5–6, Dkt. No. 50. Second, Trustee points out that Debtors did not rollover the "distribution-in-kind" of the Life Partners insurance policies to the U.S. Bank IRA within the sixty days as in IRC §  408(d)(3).[8]  Obj. at 6, Dkt. No. 26.

---

[8] Trustee also argues that Debtors' interest in the Provident IRA was not IRC-qualified because their funds were invested in life insurance policies, something expressly prohibited by IRC § 408(a)(3).  *See* Resp. to Debtors' Resp. at 8, Dkt. No. 40.  But there is little factual information in the record regarding the

MEMORANDUM OF DECISION – 17

**1.      The funds deposited in the U.S. Bank IRA came from ASM,
not Provident or Life Partners.**

Trustee argues that Debtors' contribution in 2016 to the U.S. Bank

IRA was not a a qualified "rollover contribution" because the source of the

funds was not another qualified IRA, but came from the payment made by

ASM for the purchase of Debtors' claim in Life Partners' bankruptcy case.

Tr.'s Reply at 5–6, Dkt. No. 50.  Debtors only response is that Trustee

waived this argument.  Trustee did not waive this argument,[9] which is a

correct one.

Section 408(d)(3) of the IRC requires that a rollover contribution

must be "distributed out of an individual retirement account."  Here,

---

details of the Provident IRA investment of Debtors' funds in Life Partners, Inc.
Because resolving that issue will not change the outcome in this case, the Court
declines to address Trustee's argument.

[9] Debtors argue that Trustee waived this argument.  Resp. to Tr.'s Suppl.
Mem. at 7, Dkt. No. 49.  Trustee contends that this argument falls within his
general arguments that Debtors' contributions to the U.S. Bank IRA were not
tax-qualified.  Tr.'s Reply to Resp. at 3, Dkt. No. 50.  At the hearing, the Court
raised questions about the source of Debtors' deposits to the U.S. Bank account.
Debtors were given an opportunity to respond to this issue in post-hearing
briefs, but rather than addressing the merits, chose instead to argue that Trustee
waived the argument.  Debtors are therefore not prejudiced by the Court's
consideration of this issue.

MEMORANDUM OF DECISION – 18

Debtors' "distribution" did not come from Provident, nor even from Life

Partners.  While Debtors argue the funds effectively originated from the

money invested in the Provident IRA, the record establishes that the funds

actually deposited in the U.S. Bank IRA came from ASM, not from

Provident or Life Partners.  Because of this, then, the U.S. Bank deposit was

not a "rollover" as defined in 26 U.S.C. § 408(d)(3).

> **2.**    **The U.S. Bank IRA deposit did not occur within the time
> required for a rollover by the IRC.**

Trustee argues that, even if the source of the deposited funds were

not a problem for Debtors, their alleged rollover contribution was not

made within sixty days after Provident transferred Smith's IRA interests to

him, personally.  Obj. at 6, Dkt. No. 26.  Again, the Court agrees with

Trustee.

At his request, Provident, the custodian, closed out Smith's IRA

account in late 2013 or early 2014.  Provident did so by transferring the IRA

investments, the interests in the Life Partners policies, into Smith's  name.

Debtors do not dispute that this occurred, nor can they contest that the

subject deposits were not made to the U.S. Bank IRA until 2016.  Even so,

MEMORANDUM OF DECISION – 19

Smith insists that he did not take steps to move the investments into the

U.S. Bank IRA because he was unaware that they were in his name until

2016, when the IRS first requested that he file a tax return to account for the

distribution.  Resp. to Tr.'s Obj. at 3, Dkt. No. 33; Resp. to Tr.'s Suppl. Mem.

at 1–6, Dkt. No. 49.  The evidence suggests something different.

In January 2014, Provident notified Smith it intended to transfer his

IRA account interests to his name.  Smith received and responded to this

letter.  In August 2014, Smith filed a proof of claim in the Life Partners

bankruptcy case indicating, under penalty of perjury, that he, not his IRA,

was a creditor.  Then, in 2016, he, personally, executed a contract to sell his

bankruptcy claim to ASM.

The only document in the record that references the "Elvin Smith

IRA" after the assets were distributed by Provident was a May 2014 notice

to Smith disclosing that Life Partners resold one of the life insurance

policies.  But given the proximity in time to the change of ownership of the

policies, the reference in this notice was likely to the Provident IRA, not

any new IRA, due to a delay in Life Partners updating its records.  Indeed,

MEMORANDUM OF DECISION – 20

when Life Partners later filed for bankruptcy, it indicated in its schedules

that Smith, individually, owned the remaining policies.

Despite this factual record, Debtors argue that the Court should

allow their claim of exemption as if Provident had never transferred them

to Smith's name.  They argue that this case is similar to *In re Susan Sutton-*

*Robinson*, 472 B.R. 77 (Bankr. D. Ariz. 2012), where a brokerage firm

erroneously transferred the debtor's assets from a qualified IRA to a

nonexempt account and failed to properly correct the mistake until after

the debtor filed a bankruptcy case.  *Id.* at 80-81.  Noting that the IRS

permits taxpayers to "cure" defects in qualified IRA's,[10] the bankruptcy

court held that the assets had not lost their exempt status despite being

placed in a nonexempt account as of the petition date, because "the facts

indicate[d] a bookkeeping error, the lack of any complicity or knowledge

by Debtor in the 'distribution,' and the timely admission and correction of

---

[10] *In re Susan Sutton Robinson* cites *Jankelovitz v. C.I.R.*, T.C.M. 2008-285, 2008 WL 5330811 at *2 (Tax Ct. 2009), which explains that under 26 U.S.C. § 408(d)(3)(I) the Secretary of the Treasury may waive the 60-day requirement for rollovers when the failure to do so would be against equity and good conscience. 472 B.R. at 26, n.2.

MEMORANDUM OF DECISION – 21

the mistake on the book by [the brokerage firm] once the error was discovered." *Id.* at 87.  Based upon this case law, Debtors argue here that the Court should disregard what actually occurred (*i.e.,* the Provident to Smith transfer), in favor of what they suggest is the more equitable result.

*In re Susan-Sutton Robinson* is distinguishable.  In this case, Smith was promptly notified about the transfer of the policies to his individual name, a transfer that was not the result of any error by Provident.  As noted above, the transfer was made at Smith's request.  Thus, the Court declines to adopt the approach taken by the bankruptcy court in *In re Susan-Sutton Robinson.*

Even assuming Smith's deposits to the U.S. Bank IRA originated with the Provident IRA, rather than ASM, on this record, the Court concludes that Debtors' 2016 deposit was not a rollover contribution because it did not occur within sixty days of distribution of the investments to Smith from Provident made in 2014.

Because the deposit in the U.S. Bank IRA both exceeded the IRC contribution limit for 2016, and did not constitute a proper rollover

MEMORANDUM OF DECISION – 22

contribution, Debtors' deposits in the U.S. Bank IRA are not a pension, annuity, or retirement allowance accrued under a plan described in § 408 of the IRC as required for an exemption under Idaho Code § 11-604A.

## F.  Leave to Seek a Determination from the IRS

As a last ditch effort to preserve their exemption claim, Debtors request that they be allowed to seek a determination by the IRS that the U.S. Bank IRA, and the funds in that account, qualify under IRC § 408, and therefore, are exempt.  For support, they cite an unpublished decision from the Ninth Circuit Bankruptcy Appellate Panel:  *D.A.N. Joint Venture III, L.P. v. Richey (In re Richey)*, 2011 WL 4485900 (9th Cir. BAP 2011).

In *Richey*, the objecting party argued that funds in the debtors' IRA could not be exempt because they had been rolled over from debtors' unqualified plan.  *Id.* at *10.  In response, the debtors offered letters detailing a favorable determination from the IRS, although none of them had been issued as of date the debtors' prior plan was terminated and the funds were rolled into the IRA.  *Id.* at 3–4.  The objecting parties' expert witness also pointed to defects in the plan that could have potentially

MEMORANDUM OF DECISION – 23

disqualified the plan under the IRC.  *Id.* at 4.  Given those circumstances,

the bankruptcy court ordered the debtors to participate in the IRS's

voluntary compliance program ("VCP"), to obtain a determination of

whether the plan from which the funds originated was tax-qualified, and

to request that IRS  permit debtors to cure any plan defects with retroactive

effect.  *Id.* at 4.  Via the VCP, the debtors identified the failures in their

former plan to the IRS, and proposed various ways to correct the defects.

*Id.* at 5.  The IRS eventually issued a compliance statement allowing for a

cure of the defects with retroactive effect, indicating that IRS would not

pursue  sanctions or disqualification of the prior plan.  *Id.*  The bankruptcy

court, relying on the IRS compliance statement, overruled the objection to

the debtors' exemption claim, *Id.* at 6–7, and on appeal, the BAP affirmed

stating:

> Here, on the date of petition, [the debtors] possessed a right
> under federal tax law to participate in the VCP and seek a
> determination from the IRS on whether or not the [former] plans
> were qualified on their termination dates, and to cure any defects
> potentially disqualifying the Plan to bring them back into IRC
> compliance with retroactive effect.

Id. at *11.

MEMORANDUM OF DECISION – 24

As an unpublished opinion, the BAP's decision in *Richey* is not binding on this Court.  Moreover, by blessing the bankruptcy court's exercise of discretion in *Richey*, the decision would not require this Court to allow Debtors to participate in the VCP.   Here, the Court declines Debtors' suggestion that they should be able to resolve their exemption dilemma via an IRS determination.[11]

Debtors have not effectively countered the fact that they have not complied with the IRC restrictions and requirements for IRAs.  Their primary response to Trustee's position is an equitable argument that places the blame for their lack of compliance on Provident.  Moreover, although relying, in this decision, on the IRC, the Court is not involved in making a tax determination concerning the transactions and funds in question.  Instead, the Court is deciding whether Debtors failed to follow IRC § 408, a condition imposed by the Idaho legislature to exempt subject funds from

---

[11]  For purposes of this decision, the Court assumes Debtors have the right to seek an IRS determination regarding the transactions in, and status of, their IRA accounts.  Trustee does not argue that they may not.  However, under the circumstances in this case, the Court need not, and therefore does not, decide they have such a right.

MEMORANDUM OF DECISION – 25

creditor claims pursuant to Idaho Code § 11-604A.  Thus, even were a

determination made by IRS in this case, it would not control the outcome

of this contest.  Indeed, on these facts, such a determination would be of

doubtful assistance to the Court.  In other words, to the extent the Court

has discretion to allow Debtors to seek an IRS determination, the Court

declines to do so.

### *Conclusion*

The Court empathizes with Debtors' ultimate loss of their entire

original retirement investment.  But while Smith argues he intended to

effect a rollover of his Provident investment to the U.S. Bank IRA, the facts

suggest otherwise.  As the Court has previously noted, "[u]nfortunately, [a

debtor's] intention to make property exempt does not, standing alone,

accomplish that goal . . .[;] [a] debtor's election on how to handle his or her

assets may unintentionally waive protections otherwise provided by the

Code or state law."  *In re Kane*, 99.4 IBCR 175, 177-178, 1999 WL 33490225,

at *4–5 (Bankr. D. Idaho Nov. 24, 1999).

Trustee's objection to Debtors' claim of exemption in the U.S. Bank

MEMORANDUM OF DECISION – 26

IRA is sustained.  Debtors were not eligible to make an IRA contribution in 2016 because they had no earned income.  In addition, the U.S. Bank IRA deposit was not a proper rollover from the Provident IRA.  As a result, the funds in the U.S. Bank IRA were not part of a pension, annuity, or retirement allowance accrued under an IRA as described in IRC § 408, and thus cannot be exempted under Idaho Code § 11-604A.

A separate order will be entered.

Dated:  May 12, 2017

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 27